JANUSKA v. MULLINS.

1. CONTRACTS—THIRD-PARTY BENEFICIARIES.
   Defendant assignees of purchasers' interest in a residence property which had not been sold at time of trial in action by third parties whose house defendants became obligated to complete by reason of assignment from the building contractor, were not released from such obligation in whole or in part by reason of the fact that there was a balance due from plaintiffs to the contractor.

2. SAME—THIRD-PARTY BENEFICIARIES—FRAUD OF ORIGINAL OBLIGOR.
   Defendants' assumption of obligation to complete plaintiffs' house which had been commenced by a third party may not be avoided by fraud of latter to whom plaintiffs owed a balance under the construction contract, which balance was recited in agreement whereunder defendants assumed obligation to complete plaintiffs' house.

3. DAMAGES—BREACH OF CONTRACT—DUTY TO MITIGATE—BURDEN OF PROOF.
   Defendant has the burden of showing that plaintiff has failed to use reasonable efforts within his power to minimize damages occasioned by defendant's breach of a contract.

4. SAME—MITIGATION—EVIDENCE.
   Plaintiffs, whose new house defendants became obligated to complete, held, to have failed to use reasonable efforts within their power to mitigate damages occasioned by defendants' breach of agreement to complete the house, under record presented; insofar as they waited more than 3 months after termination of negotiations with defendants in efforts made to get them to complete it.

REFERENCES FOR POINTS IN HEADNOTES
[3] 15 Am Jur, Damages, § 331.
[5] 15 Am Jur, Damages, § 45.

5. CONTRACTS—CONSTRUCTION CONTRACT—BREACH—DAMAGES.

Defendants were properly found liable for reasonable cost found necessary to complete house over the original contract price where they failed to complete it after contracting with original builder to do so.

6. COSTS—FAILURE OF EITHER PARTY TO PREVAIL IN FULL.

No costs are allowed either party in action for breach of contract, where neither party has prevailed in full.

Appeal from Muskegon; Pugsley (Earl C.), J., presiding. Submitted October 11, 1950. (Docket No. 33, Calendar No. 44,893.) Decided March 1, 1951.

Action by Daniel Januska and wife against J. Thomas Mullins and another for damages caused by failing to perform a building contract. George H. Vigeant and wife added as parties defendant. Judgment for plaintiffs against defendant Mullins and added defendants. Added defendants appeal. Affirmed in part, reversed in part.

*Alexis J. Rogoski,* for plaintiffs.

*George A. Parmenter* and *Elmer R. Kuck,* for defendants.

REID, C. J. Defendants George H. Vigeant and Elizabeth E. Vigeant, his wife, appeal from a judgment for plaintiffs for $3,059.09 and costs. The case was dismissed as to defendant the Mulvee Corporation. Defendant J. Thomas Mullins suffered judgment by default and has taken no appeal. We herein refer to the defendants George H. Vigeant and Elizabeth E. Vigeant as though they were the only defendants.

Plaintiff sued as third-party beneficiaries on a contract made by and between the defendants and J. Thomas Mullins.

On January 28, 1947, J. Thomas Mullins contracted to build a house for plaintiffs Daniel and Beatrice Januska for $8,480 to be paid in designated instal-

ments. It was to be financed in part by an FHA loan made by the Michigan National Bank of Grand Rapids, and Mullins was obligated to complete the house within 90 days.

Mullins abandoned the building project after having collected all but $2,400 of the building fund. The house was erected on its foundation but the exterior work was yet to be done and the garage and breezeway were yet to be built. Such was the state of affairs on August 29, 1947 when the following agreement was entered into:

"AGREEMENT

"THIS AGREEMENT, made and entered into this 29th day of August, 1947, by and between J. Thomas Mullins and June R. Mullins of Whitehall, Michigan, hereinafter called the parties of the first part, and George H. Vigeant and Elizabeth E. Vigeant of Muskegon, Michigan, hereinafter called the parties of the second part,

"WITNESSETH:

"That whereas the parties of the first part are the original contractors for the building of houses on the following described properties:

"a—Lot 6, Block 5, Mona Heights Add., Muskegon Heights, Mich.

"b—Lot 13, Block 245, Muskegon Heights, Mich.

"c—Lot 101, Victory Addition, Muskegon Heights, Mich.

"and

"Whereas the parties of the first part are desirous of cancelling their contracts with the owners of the above described properties, and

"Whereas the parties of the first part do owe past due bills for labor and material furnished for the above described properties amounting to $2,434.50, as evidenced by separate sworn contractor's statements, and

"Whereas the parties of the first part do own 1,500 shares of stock, $1 par value, of the Mulvee Corpora-

tion and also have an equity in a house they are purchasing from William Woller on a land contract on which they do owe a balance of $2,040, said house being located at 319 E. Elliott St., Whitehall, Michigan, and

"Whereas the parties of the second part are willing to assume the responsibility of the past due bills as listed on the sworn statements and for the completion of houses, it is agreed as follows:

"1. In consideration of assuming the past due bills listed on separate sworn statements and of assuming the completion of said houses by the parties of the second part, the parties of the first part do hereby agree to pay the sum of $4,132.75.

"2. The parties of the second part will accept towards the sum of $4,132.75 the 1,500 shares of Mulvee Corporation stock at par value, tools and material at price of $297.32, account receivable from Dan Januska at $71.53, leaving a balance of $2,263.90.

"3. The parties of the first part do hereby assign, transfer and convey all their equity and right to the property located at 319 E. Elliott St., Whitehall, Mich. to the parties of the second part on condition that when sale of the property is made the proceeds of the sale will be applied to the present land contract and the sum of $2,263.90 and all sums over and above, minus selling costs will be turned over to the parties of the first part.

"4. It is also agreed that if the owner of the property of lot 13, block 245 (Dan Januska), does agree to increase his contract by an amount of $1,000, the parties of the second part will give parties of the first part credit of the extra $1,000.

"5. It is further agreed that if the account at Wood Tile Corp. and Nichols & Cox Lbr. Co. have been paid as indicated by an audit of their books, the parties of the second part will be given credit for $186.93.

"IN WITNESS WHEREOF, the parties have executed this agreement on the day and year first above written.

> "J. THOMAS MULLINS
> "JUNE R. MULLINS
> "ELIZABETH E. VIGEANT
> "GEORGE H. VIGEANT

"OAKLAN R. SENF"

One of the 3 houses specified in the above contract was the Januska house in question.

The cost of completion of plaintiffs' house would have been $3,709.09, according to plaintiffs' witnesses, or $3,400.00, according to defendants' testimony on examination by the court. Mullins turned over to defendants the contract plans and specifications of the Januska house together with the keys, evidently on or about August 27, 1947, and afterward removed some material from the house apparently not needed in the construction. Plaintiffs made no showing that they ever requested or were refused the keys to the house or possession of the house. Defendants never put plaintiffs in possession of the house nor turned the keys over to plaintiffs.

Before the making of the quoted contract, and also afterward, defendants informed plaintiffs that defendants required a thousand dollars more than the original contract price to complete the house. Plaintiffs definitely knew before October, 1947 that defendants would not complete the house unless additional moneys were paid. Plaintiffs refused to pay the additional sum of money unless the defendants would agree to certain conditions, which included a performance bond. The conditions named by plaintiffs were not acceptable to the defendants and all negotiations terminated in February, 1949.

The Januska house had it been completed at the specified time would have had a rental value in 1947 and 1948 of $65 per month.

After the agreement of August 29, 1947 was made, Mullins turned over 1,500 shares of the Mulvee Corporation stock to defendants but defendants claim that he did not pay the sum of $2,263.90 mentioned in paragraphs 2 and 3 of the agreement. In actual cash he paid only the sum of $750, leaving about $1,500, which defendants claim is still due them but plaintiffs claim that the $1,500 balance was extinguished by defendants' receiving the assignment of the Whitehall property. Defendants claim that they are not bound by the contract of August 29, 1947 because of fraud on the part of Mullins and claim that Mullins sold his equity in the house in Whitehall, but in support of such claimed sale by Mullins defendants offered only hearsay testimony which was stricken out by the court. Defendants never received any of the money paid by the Michigan National Bank for the construction of the Januska house.

Defendants completed the other 2 houses mentioned in the agreement of August 29, 1947. In April, 1947, the Mulvee Corporation had been formed by Mullins and the defendants in this case to engage in general construction work but the corporation never assumed any responsibility for the Januska contract and as we have heretofore noted, the corporation was dismissed as a defendant.

Defendants afterward became the sole owners of the Mulvee Corporation when Mullins turned over his stock to defendants pursuant to the agreement of August 29, 1947.

In regard to the balance of $2,263.90 mentioned in the contract of August 29, 1947, the claim of plaintiffs is that the defendants accepted a transfer of the title of Mullins in the Whitehall property, and that the assignment thus made was an outright, unconditional assignment; it empowered the defendants to resell the interest conveyed to them without the con-

sent or intervention of the Mullinses; it obligated the defendants to turn over to the Mullinses any amount realized from a resale of the property in excess of $2,263.90, but did not restrict the selling price by fixing a minimum price for which the property should be resold; and it imposed no obligation upon the Mullinses to pay any deficiency which would result from a resale of the property for less than $2,263.90, but imposed on defendants the duty of acting in good faith and trying to realize surplus if they could.

Defendants made no sale up to the time of the trial of the Whitehall property. There is little testimony in the record concerning the item, $2,263.90. The contract itself is of peculiar nature in that particular. The trial court held that defendants are not by reason of the claimed balance of $2,263.90 entitled to any release, in whole or in part, from their obligation under the contract of August 29, 1947 to complete the Januska house, in which particular we affirm the trial court's finding.

Defendants claimed they should not be held to the fulfillment of any obligation under the contract of August 29, 1947 because of the fraud of Mullins and because the sum of $2,263.90 was not paid, which claim was rejected by the trial court and we affirm its ruling in that particular.

Among other things in the declaration plaintiffs alleged that by reason of the default of defendants, plaintiffs were deprived of the rental value of the house in question from and after June 1, 1947 to the date of the filing of the declaration and are still being deprived of the rental value. This averment was not denied or answered by defendants.

In *Rich* v. *Daily Creamery Company*, 296 Mich 270 (134 ALR 232), we say at page 282:

"There is no question but that it is a well-established rule that in case of a breach of contract the

injured party must make every reasonable effort to minimize the damages suffered and that it would be the duty of the court upon request so to charge the jury. We hold, however, under the authorities that the burden is upon the defendant to show in mitigation of the damages claimed that the plaintiff has not used every reasonable effort within his power so to minimize his damages. *Tradesman Co.* v. *Superior Manfg. Co.,* 147 Mich 702; *Flickema* v. *Henry Kraker Co.,* 252 Mich 406 (72 ALR 1046); *Milligan* v. *Haggerty,* 296 Mich 62."

See, also, *Allen* v. *Whitlark,* 99 Mich 492.

However, without an issue being raised in the pleadings over the matter of failure to make reasonable effort to minimize damages, plaintiffs saw fit to go into the subject and gave testimony as to plaintiffs not being put into possession and the key never having been turned over to plaintiffs. Defendants on cross-examination of plaintiff Januska by Mr. Kuck elicited Januska's reason for not completing the building, that he did not have the money to get someone else to complete it, and didn't want to make loans, though he had a contractor look at it and estimate what the completion would cost, and discussed with the Mulvee Corporation the matter of completing the house in company with his, Januska's, attorney Rogoski.

The matter of the nonmitigation and the reasons for it were put in issue before the court. The finding of the court ignoring the effect of plaintiffs' nonmitigation is in effect that plaintiffs were excused from mitigating, or had not failed to make reasonable efforts to mitigate. This conclusion we find against the clear weight of the evidence and in that particular, the finding of the trial court is reversed.

Defendant George H. Vigeant while under obligation to complete the contract because of his agreement with Mullins on August 29, 1947, after that

date informed plaintiff Januska that he would not complete it unless he obtained an additional thousand dollars or so more from Januska. The trial court found that 3 months was a reasonable time to complete the contract, which ruling seems to be fair and we affirm it. The delay of the completion of the structure from November 29, 1947 (3 months after the making of the agreement in question) was due to unjust and unreasonable efforts of Vigeant to get out from under an obligation to complete the house by concealment of his liability and by creating a false impression on the part of Januska that he, Vigeant, was not under obligation to complete.

The delay in the completion of the construction occasioned by negotiations was for that and other reasons shown in the testimony all the fault of defendant Vigeant. Negotiations ceased in the fore part of February, 1949, at which time plaintiff was certain that defendant Vigeant would under no circumstances fulfill his obligation to complete the house. Plaintiff was at that time obligated to procure another contractor to complete the construction of the house and a reasonable time so to do is 3 months from and after February 1, which would be May 1, 1949. By a clear preponderance of the evidence, plaintiffs are entitled to recover for rentals from November 29, 1947 to May 1, 1949, $1,105 and for no period subsequent to May 1, 1949.

The court's finding was that a fair estimate of the reasonable cost to complete the house in accordance with the plans and specifications agreed upon would be $3,709.09, an excess of $1,304.09 over the original contract price. The court's finding that defendants Vigeant and defendant Mullins are liable for the amount of $1,304.09 for such item is within the fair bounds of the testimony and the court's finding in that particular is affirmed.

The finding of the court that the defendants were

liable to plaintiffs in the sum of $1,755 for loss of rentals is for the reasons before given, set aside. The case is remanded to the trial court for a redetermination of the amount of loss for rentals in keeping with this opinion, and entry of appropriate judgment. Neither party having prevailed in full, no costs are allowed.

BOYLES, NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.